IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LARRY GIBSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 16 C 2510 |
| GHALIAH OBAISI, independent executor of the estate of DR. SALEH OBAISI, LATONYA WILLIAMS, MICHELLE MILLER, and DR. ALMA MARTIJA, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Larry Gibson, a former inmate at Stateville Correctional Center, has sued members of the prison's medical staff under 42 U.S.C. § 1983 for violating his Eighth Amendment rights. Gibson alleges that Stateville's former medical director, Dr. Saleh Obaisi,[1] and other members of the medical staff—physician assistant Latonya Williams, nurse Michelle Miller, and Dr. Alma Martija—disregarded his complaints of severe ear pain and failed to refer him to a specialist. He contends that their disregard amounted to deliberate indifference to his serious medical condition. The defendants have moved for summary judgment. For the reasons below, the Court grants the motion in part and denies it in part.

---

[1] Dr. Obaisi passed away in 2017, and the administrator of his estate has been substituted in his place as a defendant.

**Background**

The following facts are undisputed except where otherwise noted. Larry Gibson was an inmate at Stateville Correctional Center from May 2006 until April 2016. During that time, he experienced a number of health problems, including issues with his ears. Exactly when these particular problems began is disputed, but the substance is not: on at least three occasions, Gibson presented to medical personnel with significant inflammation, pain, and blockage in one or both ears and on each occasion he was treated by one or more of the defendants.

According to Gibson, he first experienced ear problems around October 2012. Specifically, he says that he had pain, dizziness, crackling, and popping in his left ear and jaw. He testified during his deposition that he reported the ear issues to Williams during an unrelated medical appointment in November 2012. The defendants dispute Gibson's timeline. They contend that there is no record of Gibson complaining about ear pain in 2012. They also point out that Gibson sent letters to Dr. Obaisi and another Stateville medical administrator complaining about the quality of care he was receiving for other conditions in early 2014 but did not mention ear issues.

After the alleged conversation with Williams, the record falls silent on Gibson's ear issues for nearly two years. Then, in July 2014,[2] Gibson was involved in an altercation with his cellmate that resulted in an acute injury to his left ear. He testified

---

[2] The precise date is disputed. Gibson contends the altercation took place on July 18, 2014. The defendants counter that there is no record of Gibson having a fight or being seen for related injuries on or near that date. The Court notes that records presented in another case brought by the same plaintiff, *Gibson v. Obaisi*, No. 14 C 8043 (N.D. Ill.), places the incident in February 2014. Nevertheless, this irregularity is immaterial to the outcome.

2

during his deposition that his ear became badly swollen and that the injury caused him dizziness. Gibson says that he was examined by Dr. Obaisi two days after the incident. During the visit, he contends, Dr. Obaisi refused to discuss his ear injuries and was interested in assessing only his other injuries. The defendants deny this testimony but do not point to any contrary evidence.

Gibson was finally seen for his ear complaints in August 2014. On August 24, Gibson told a nurse that he was experiencing left ear pain. He was promptly scheduled for an assessment and saw a nurse in the health unit on August 26. The nurse noted redness in both ear canals but no perforation of the ear drums. The nurse also noted that a finger-rub hearing test was normal for both ears despite Gibson's reports of partial hearing loss. Gibson reported to the nurse that he had put toilet paper in his ears in the days leading up to visit. Notes from the visit also suggest that Gibson reported that the ear discomfort had been ongoing for only four days. In any case, the nurse instructed Gibson not to put anything else in his ears and referred him to see Dr. Obaisi on September 8.

Because of lockdowns at the prison, Gibson did not see Dr. Obaisi until September 30. Curiously, notes made during that visit do not mention anything about ear pain despite the fact that the referral was undisputedly the result of the ear-related nurse visit. According to the defendants, the lack of notation suggests that Gibson's ear problems had resolved themselves and that he must not have mentioned them to Dr. Obaisi. Gibson disagrees. He contends that he attempted on this and other occasions to draw Dr. Obaisi's attention to his ear pain but that Dr. Obaisi ignored his complaints.

Gibson next saw a member of the Stateville medical staff about his ear issues on

October 17, 2014. The nurse who assessed Gibson on this occasion concluded that Gibson had impacted wax that needed to be removed and recommended that he use Debrox ear drops to soften the wax. Williams concurred. Gibson received the drops and was scheduled for an ear lavage—that is, an ear canal wash using water—on October 26. At that cleaning, Gibson's right ear was flushed, but the nurse treating him concluded that the wax in his left ear needed more time to soften before it could be removed. He was instructed to continue using the Debrox drops and return the following Saturday, November 1.

Gibson's November 1 visit involved nurse Miller and Dr. Martija. Miller administered the lavage and successfully flushed a large amount of material from Gibson's left ear. According to Gibson, the material flushed from his ear included not only ear wax but also dried blood, pieces of insects, and perhaps eggs. Gibson testified during his deposition that Miller and Dr. Martija conferred about the material that had come from his ear and that Dr. Martija initially suggested he should be referred to a specialist. But, according to Gibson, Miller vetoed the suggestion and told Dr. Martija that such a referral was not necessary. The defendants dispute that any of this occurred. They point to Miller's testimony that she completed the lavage but did not recall anything out of the ordinary coming out of Gibson's ear. Nor, according to Miller and Dr. Martija, did their claimed conversation about a specialist referral actually occur. In any event, on November 4, Gibson filed a grievance complaining of the care he received at the visit and asking for a prompt referral to an ear specialist.

The November 1 lavage appears to have been successful; Gibson apparently did not complain of ear pain for several months. Despite visits with various medical

4

personnel later in November 2015, there is no record of Gibson making complaints or other comments about his ears. His ears were checked during a visit regarding a respiratory infection in January 2015, and the evaluating nurse did not note redness or other issues.

Later in January 2015, Gibson had his annual checkup with Dr. Martija. The notes from that visit indicated that wax was again beginning to build up in Gibson's ears. It was also at this visit that Dr. Martija first diagnosed Gibson with presbycusis—hearing loss caused by aging. Dr. Martija apparently planned for Gibson to receive a hearing test to confirm her diagnosis, but she did not make a referral to a facility with the necessary equipment. At a follow-up visit in February, Dr. Martija confirmed that Gibson was experiencing a wax buildup and again prescribed Debrox drops and told Gibson to return if symptoms did not resolve themselves.

Gibson returned in April 2015 again complaining of earache, wax buildup, and partial hearing loss in his right ear. He was again prescribed Debrox drops to loosen the wax. He received a lavage of the right ear on April 12. According to the notes from that visit, the lavage flushed a large amount of white tissue paper as well as ear wax from Gibson's right ear but could not completely clear the ear canal. At this visit the nurse also noted that wax had again accumulated in Gibson's left ear. The nurse ordered Gibson to return a week later on April 19 to remove the remaining material from his right ear and to flush his left ear. Gibson was given Debrox to loosen the wax in both ears in the meantime. Gibson returned on April 19, and both ears were flushed. He reported that his hearing improved.

Finally, Gibson complained of ear problems once more on August 30, 2015, and

5

he was seen by a nurse on September 1. Although he reported pain, this time Gibson apparently reported no hearing loss or drainage. The nurse once again ordered Debrox to break down the wax. He was seen again on September 12 and reported that the pain was better but that his hearing had not returned to normal. The nurse noted that there again appeared to be tissue paper embedded deeply in Gibson's ear canals. Gibson had both ears flushed on September 20. According to the nurse's notes, a large amount of tissue paper and ear wax was removed.

In the following months, Gibson saw several providers at Stateville's medical unit but did not complain of ear pain or hearing loss. Gibson was transferred away from Stateville on April 20, 2016. This suit does not concern his treatment after the transfer.

**Discussion**

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Martinsville Corral, Inc. v. Soc'y Ins.*, 910 F.3d 996, 998 (7th Cir. 2018). The Court views the evidence and draws all reasonable inferences in favor of the plaintiff. *See Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019). To survive summary judgment, Gibson must "present specific facts establishing a material issue for trial, and any inferences must rely on more than mere speculation or conjecture." *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019).

Prison officials violate the Eighth Amendment's prohibition on cruel and unusual punishments if they are deliberately indifferent to an inmate's serious medical needs. *Id.* at 1048-49 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on this claim, Gibson must show "that he suffered from (1) an objectively serious medical

6

condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Id.* (internal quotation marks omitted). Gibson must also show that the official's deliberate indifference caused him to suffer some injury. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Gibson's claims can be sorted roughly into two categories. First, he contends that the delay in treating his ear pain amounted to deliberate indifference by the defendants. Second, he argues that the defendants' failure to refer him to an ear specialist also violated the Eighth Amendment. The defendants contend that Gibson has failed to point to evidence from which a reasonable jury could find for him on either injury. Specifically, they focus their arguments on the latter two requirements—subjective indifference and causation—and argue that Gibson can prove neither.[3]

**A. Delay**

Gibson testified during his deposition that he first told Williams about ear pain he was suffering in October 2012. He says that Williams failed to assess or address his complaints. Gibson also testified that he first complained to Dr. Obaisi about his ear issues in July 2014, after the altercation with his cellmate, but that Dr. Obaisi refused to discuss the matter with him. Gibson contends that, as a result of both failures to respond to his complaints, he suffered additional unnecessary pain.

---

[3] Although the parties do not address it, the Court questions whether there is evidence that would permit a reasonable jury to find that Gibson's episodic ear pain amounted to an objectively serious underlying medical condition that rises to the level required to sustain a claim under the Eighth Amendment. *See Gayton*, 593 F.3d at 620 ("An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." (internal quotation marks omitted)). The parties should be prepared to address this issue at the next status conference.

7

The defendants contest Gibson's timeline, relying on the fact that his complaints were not noted in the relevant medical records. They argue that the first evidence of ear complaints in Gibson's medical records appeared in August 2014 and that he cannot, therefore, demonstrate that he ever made the earlier complaints. They also point to Williams's notes from her August 26, 2014 assessment of Gibson, in which she indicated that he reported that his ear pain had been ongoing for only four days—not, as Gibson now contends, two years.

"A delay in treatment may show deliberate indifference of it exacerbated the inmate's injury or unnecessarily prolonged his pain." *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). It is undisputed that the several rounds of treatment with Debrox ear drops and ear canal flushes that Gibson eventually received resulted in pain relief. Because a reasonable jury could thus conclude, crediting Gibson's sworn testimony, that Williams and Dr. Obaisi knowingly and unnecessarily prolonged Gibson's pain by ignoring his complaints until August 2014, they are not entitled to summary judgment on the basis they argue. Contrary to the defendant's suggestions, the fact that Gibson's complaints did not appear in his medical records does not defeat this claim. Gibson has testified otherwise, and he contends that Williams and Dr. Obaisi improperly ignored his complaints. Drawing reasonable inferences in his favor, as the Court must, their failure to document those complaints is not dispositive; indeed, a jury that believed Gibson's testimony about his complaints could properly take the absence of any notations in the records as supporting his claim of deliberate indifference.

The same cannot be said for nurse Miller or Dr. Martija, however. There is no evidence that would support a finding by a reasonable jury that either knew about, much

8

less chose to ignore, Gibson's painful condition before they were actively making efforts to treat it. See Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (en banc) (citing Farmer v. Brennan, 511 U.S. 825, 837, 844 (1994)) ("[A] plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm."). For this reason, Miller and Dr. Martija are entitled to summary judgment on delay claims.

**B.     Failure to refer to a specialist**

Gibson next argues that the defendants were deliberately indifferent in failing to refer him to an ear specialist. In support of his contention, Gibson points to expert testimony from Dr. Todd Newberger, an internist who reviewed Gibson's medical records. In Newberger's view, Gibson's repeated presentation with ear pain and diagnosis with presbycusis—age-related hearing loss—necessitated a referral to an ear specialist. Newberger also opines that the defendants' failure to make such a referral was below "standards of care to be provided in the community." Newberger Rep., Ex. K to Pl.'s L.R. 56.1 Stmt., dkt. no. 133-1, at 6. Gibson further relies on his own testimony that Dr. Martija suggested during the November 1 lavage that he might need a referral to a specialist. Her statement, in Gibson's view, suggests that a referral was necessary.

The defendants contend that this evidence is insufficient to support a conclusion that a failure to make a referral to an ear specialist caused Gibson any harm. They note that it is uncontested that the Stateville medical unit successfully treated each episode of ear pain Gibson reported. The defendants also point out that some of the named defendants—physician assistant Williams, nurse Miller, and Dr. Martija—did not actually have the authority to make a referral to a specialist; only Dr. Obaisi could make the referral.

9

Even assuming for the sake of argument that the evidence is sufficient to support an inference of deliberate indifference on the part of each defendant, to defeat summary judgment Gibson must show that the official's deliberate indifference caused him to suffer some injury. *See Gayton*, 593 F.3d at 620. Gibson has not pointed to evidence sufficient to permit a reasonable inference that the defendants' failure to refer him to a specialist caused him injury. It is undisputed that, after each round of ear-related symptoms, the Stateville medical unit successfully treated Gibson by giving him ear drops and flushing his ears. By Gibson's own account, these treatments successfully addressed his pain. Indeed, Gibson's expert, Dr. Newberger, even opined during his deposition that the treatment Gibson received at Stateville was "appropriate." Newberger Dep., Ex. A. to Defs.' L.R. 56.1 Stmt., dkt. no. 122, at 66:22-24. The sole criticism that Dr. Newberger levies involves the defendants' failure to refer Gibson to an ear specialist to conduct more sophisticated testing than was available at Stateville. But neither Dr. Newberger's testimony nor any of Gibson's other evidence identifies any harm that a failure to conduct such testing caused Gibson. There is no evidence, for instance, that the lack of a referral resulted in complications, greater pain than Gibson otherwise would have experienced, or a failure to diagnose a more serious condition.

Because Gibson cannot point to evidence from which a reasonable jury could conclude that the defendants' alleged deliberate indifference caused him an injury, the defendants are entitled to summary judgment on the portion of his claims stemming from the defendants' failure to refer him to a specialist.

## Conclusion

For the foregoing reasons, the Court grants summary judgment [dkt. no. 119] in

favor of all defendants on plaintiff's claim regarding the failure to refer him to a specialist and in favor of defendants Miller and Dr. Martija on plaintiff's claim regarding delayed treatment. This leaves for trial plaintiff's delayed treatment claim against defendants Williams and Dr. Obaisi. The case is set for a status hearing on June 13. 2019 at 8:45 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 30, 2019